UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RHONDA W.[1], | : | Case No. 3:20-cv-412 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

Plaintiff Rhonda W. brings this case challenging the Social Security Administration's partially favorable decision of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #15), the Commissioner's Memorandum in Opposition (Doc. #19), Plaintiff's Reply (Doc. #20), and the administrative record (Doc. #10).

**I.    Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

In the present case, Plaintiff applied for benefits on August 8, 2017, alleging disability due to several impairments, including congestive heart failure, diabetes mellitus with neuropathy, coronary artery disease with hyperlipidemia, residuals from a coronary artery bypass with grafting and obesity. After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) James E. MacDonald. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since August 8, 2017.

Step 2: She has the severe impairments of congestive heart failure, diabetes mellitus with neuropathy, coronary artery disease with hyperlipidemia, residuals form a coronary artery bypass with grafting and obesity.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Prior to April 19, 2019, her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work as defined in 20 CFR 404.1567(b) and 416.967(b) with exceptions. Specifically, [Plaintiff] is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday with normal breaks. She is never to climb ladders, ropes or scaffolds, but is frequently able to stoop, crouch and crawl. [Plaintiff] is never to be exposed to unprotected heights, moving mechanical parts or vibration. [Plaintiff] is able to frequently finger and feel with both upper extremities."

Beginning April 19, 2019, her RFC consists of "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with exceptions. Specifically, [Plaintiff] is able to lift, carry, push and pull 10 pounds occasionally and up to 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday and sit 6 hours

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

>in an 8-hour workday. She is never to climb ladders, ropes or scaffolds, but is frequently able to […] stoop, crouch and crawl. [Plaintiff] is never [to] be exposed to unprotected heights, moving mechanical parts or vibration. [Plaintiff] is able to frequently finger and feel with both upper extremities. Last, she is to use a cane for ambulation.
>
>Prior to April 19, 2019, Plaintiff was able to perform any of her past relevant work as a phlebotomist as this work did not require the performance of work-related activities precluded by her RFC.
>
>Beginning April 19, 2019, Plaintiff was unable to perform any of her past relevant work.
>
>Step 5: Since April 19, 2019, there are not a significant number of jobs that exist in the national economy that Plaintiff is able to perform.

(Doc. #10-2, *PageID* #s 42-50). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability prior to April 19, 2019. *Id.* at 50. However, beginning April 19, 2019, Plaintiff has become disabled, and her disability is expected to last twelve months past the onset date. *Id.*[3]

The evidence of record is adequately summarized in the ALJ's decision (Doc. #10-2, *PageID* #s 42-50), Plaintiff's Statement of Errors (Doc. #15), and the Commissioner's Memorandum in Opposition (Doc. #19). To the extent that additional facts are relevant, they will be summarized in the analysis below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270,

---

[3] Plaintiff's argument focused on the opinions of CNP Hatton and Dr. Williams regarding her mental health impairments and has waived any other challenges to other opinions or impairments as she failed to adequately raise them. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (finding plaintiff had waived its challenge to the ALJ's findings on certain impairments by not raising it in the merits brief).

273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.** **Discussion**

In this case, Plaintiff raises one assignment of error, which is that the "ALJ Reversibly Erred in Evaluating the Medical Evidence and Medical Source Opinions and Failed to Carry the Step Five Burden." (Doc. #15, *PageID* #1857). Specifically, Plaintiff alleges that ALJ MacDonald erred in his review of Plaintiff's treating sources, Jennifer Hatton, CNP, and Amanda Williams, D.O. *See id*. at 1857-59. In response, the Commissioner maintains that the ALJ evaluated the medical opinions and Plaintiff's complaints consistent with the regulations and that his decision is supported by substantial evidence. (Doc. #19, *PageID* #s 1875-80).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 404.1527. Because Plaintiff's claim for disability was filed in August

2017, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Previously, the Social Security Administration followed the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

However, the new regulations changed this standard for applications filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." § 404.1520c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c). Further, because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 404.1520c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." § 404.1520c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is

5

with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." § 404.1520c(c)(2).

Thus, while these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)).

In this case, Plaintiff alleges that the ALJ erred in his assessment of Plaintiff's treating certified nurse practitioner (CNP), Jennifer Hatton. (Doc. #15 *PageID* #s 1857-58). In January 2018, CNP Hatton completed a questionnaire regarding her treatment of Plaintiff. (Doc. #10-7, *PageID* #s 707-09). On the questionnaire, CNP Hatton indicated that she had been treating Plaintiff for neuropathy, coronary artery disease, and diabetes since October 2017 and that she last saw Plaintiff in December 2017. *Id*. at 708. In response to a question asking for a description of Plaintiff's medical condition, CNP Hatton explained that "[d]ue to chronic co-morbidities, she is unable to walk a half block without claudication[,]" which she indicated "started in 2014." *Id*. As for pertinent clinical findings, CNP Hatton indicated that Plaintiff was evaluated for her neuropathic pain in September and December 2017. *Id*. Additionally, while she opined that no surgical intervention was required at the time, Plaintiff used Gabapentin and Glyburide

6

medications, which she was compliant with. Id. at 708-09. Lastly, she opined that Plaintiff "was unable to walk or stand for more than 15 minutes without rest." *Id*. at 709.

CNP Hatton submitted another medical assessment form about a year and half later, in June 2019. (Doc. #10-12, *PageID* #s 1569-73). In this assessment, CNP Hatton stated that Plaintiff was "unable to lift and carry weight due to severe neuropathy." *Id*. at 1569. She estimated that Plaintiff could occasionally lift five pounds and not lift any amount of weight frequently. *Id*. at 1570. As for walking, CNP Hatton opined that Plaintiff would be limited to walking less than one hour at a time for a total of less than two hours a day. *Id*. She further stated that Plaintiff was "unable to walk a half block without pain." *Id*. With regard to sitting, CNP Hatton opined that Plaintiff could sit for up to two hours at a time for a total of four hours a day, explaining that she "suffers from severe neuropathy in her legs." *Id*. She also found that Plaintiff's neuropathy would prevent her from performing any postural activities, including climbing, balancing, stooping, crouching, kneeling, or crawling. *Id*. at 1571. Similarly, she opined that Plaintiff could never push or pull due to her severe neuropathy, but that she would have no limitations in her ability reach, handle, finger, or feel. *Id*. Finally, CNP Hatton indicated that Plaintiff would be unable to complete work at the sedentary exertional level. *Id*. at 1572.

In reviewing CNP Hatton's opinions, the ALJ ultimately found them not persuasive for several reasons. (Doc. #10-2, *PageID* #46). First, ALJ MacDonald pointed out that while CNP Hatton stated that Plaintiff was unable to walk even a half a block without claudication beginning in 2014, she had not started treating Plaintiff since 2017. *Id*. Second, with regard to her finding that Plaintiff was "unable to walk or stand for more than five minutes without rest," the ALJ noted that Plaintiff was able to walk outside with her grandchildren and regularly exercise. *Id*. He also noted that her examinations showed that she had normal strength and that her physical therapy

7

increased her functioning by forty percent. *Id*. Additionally, ALJ MacDonald noted that she was not prescribed a cane prior to her established onset date and therefore, she was not as limited as opined by CNP Hatton. *Id*. However, ALJ MacDonald did find that Plaintiff's condition deteriorated beginning April 19, 2019, and thus found CNP Hatton's opinions regarding her abnormal balance and need for a cane after that date to be more persuasive. *Id*. at 47.

The ALJ's explanation for finding CNP Hatton's opinion unpersuasive prior to the onset date he established of April 19, 2019 is clearly articulated and supported by substantial evidence. The ALJ specifically discussed the two most important factors listed in 20 C.F.R. § 404.1520c— supportability and consistency. He pointed out that CNP Hatton's opinions were lacking in support as she stated that Plaintiff was unable to walk a half block without claudication since 2014, despite the fact that she only started treating Plaintiff in 2017. While CNP Hatton likely relied on Plaintiff to provide the information related to the onset of her impairments, she provides no such explanation, thereby undermining the supportability of her opinion. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be.").

As also noted by the ALJ, CNP Hatton's statements regarding Plaintiff's ability to walk were also inconsistent with other substantial evidence. While Plaintiff correctly observes that the ALJ misquoted CNP Hatton's opinion by stating that Plaintiff was unable to walk or stand for five minutes without rest instead of the fifteen minutes that was actually provided by CNP Hatton, (*compare* Doc. # 10-2, *PageID* #46 *with* Doc. #10-7, *PageID* #709), this constitutes, at most, harmless error. *Id*. In his analysis, ALJ MacDonald pointed out that, prior to the onset date he established, Plaintiff had admitted that she walked with her grandchildren, exercised regularly, and

8

reported that her physical therapy increased her functioning by forty percent. Indeed, at several points during the period following Plaintiff's alleged onset date of August 8, 2017 and before the ALJ's established onset date of April 19, 2019, treatment records show that Plaintiff reported that she regularly exercised and that while "[a]s the day goes on[,] the pain in [her] feet gets worse[,]" she felt that her physical therapy had improved her functioning by forty percent since her initial evaluation. (Doc. #10-7, *PageID* #s 645, 665; Doc. #10-11, *PageID* #s 1322, 1324). Also during this period, Plaintiff reported that she was having some hip pain "but does not have this pain with walking." (Doc. 10-11, *PageID* #1324). She also reported that she was "able to walk a mile with her grandkids and had min[imal] hip pain afterwards." *Id.* Thus, while the ALJ did err in his recitation of CNP Hatton's opined limitations, the evidence of Plaintiff's physical functioning is still inconsistent with CNP Hatton's statements that she was unable to walk fifteen minutes without rest or a half a block without claudication. Accordingly, the ALJ justifiably relied on Plaintiff's prior reports and treatment records as being inconsistent with CNP Hatton's statements.

The ALJ also reasonably determined that CNP Hatton's finding that Plaintiff could only lift five pounds occasionally was inconsistent with the numerous treatment records from the relevant period reporting her as having normal strength. (*See* Doc. #10-7, *PageID* #s 579, 604, 646, 667-68; Doc. #10-9, *PageID* #s 912, 936, 940; Doc. #10-11, *PageID* #1307). Finally, the ALJ's consideration that Plaintiff was not prescribed a cane by CNP Hatton until April 2019 also supports his decision to not find CNP Hatton's opinions persuasive for the period before April 19, 2019. Here, the ALJ correctly noted that the record did not support a use of a cane until April 2019 when CNP Hatton prescribed it and Dr. McLean subsequently confirmed that Plaintiff relied on the cane to balance while she walked. (Doc. #10-12 *PageID* #s 1498, 1528; Doc. #10-14, *PageID* #s1789-91). Notably, Plaintiff does not allege, nor does this Court find, that use of a cane

was supported prior to this date. Thus, the ALJ's decision to not include a cane in Plaintiff's RFC until April 19, 2019, is supported by substantial evidence. In short, the ALJ clearly satisfied the articulation requirements and was not required to discuss any other factor. *See* 20 C.F.R. § 404.1520c(b)(2) (requiring only that the ALJ articulate how he considered the supportability and consistency factors).

Further, to the extent that Plaintiff challenges the ALJ's review of Amanda Williams, M.D.'s opinion on the basis that she believes it supports CNP Hatton's opinion, her argument is without merit. In July 2017, Dr. Williams completed a Family and Medical Leave Act (FMLA) form for Plaintiff indicating that Plaintiff would need August 7, 2017 through November 7, 2017 off from work. (Doc. #10-11, *PageID* #s 1220-23). On the form, Dr. Williams indicated that she treated Plaintiff from July 2016 until June 2017 and that she had also referred her to a cardiologist for lifelong treatment. *Id*. at 1221. Dr. Williams opined that Plaintiff would not be able to any of her job functions, such as walking less than a block. *Id*. In support, Dr. Williams indicated that Plaintiff had uncontrolled diabetes, severe peripheral neuropathy, left-sided sciatica, coronary artery disease, and coronary artery bypass graft surgery. *Id*. She opined that Plaintiff would not be able to "perform most physical tasks" because of these "chronic uncontrolled comorbidities." *Id*. However, when asked whether Plaintiff would need follow-up treatment after her three-month leave, Dr. Williams indicated "No." *Id*. at 1222. Similarly, when asked whether Plaintiff's condition would cause her episodic flare-ups that would cause her to not perform her job functions periodically, Dr. Williams also indicated "No." *Id*.

Contrary to Plaintiff's contentions, the ALJ's decision to not find Dr. Williams' opinion persuasive is supported by substantial evidence. As noted by the ALJ, Dr. Williams only appeared to limit Plaintiff for a temporary period of time, not exceeding twelve months. *See* Doc. #10-2,

*PageID* #46). Accordingly, her opinion was not sufficient to establish a "disability" under the regulations. *See* 20 C.F.R. § 404.1505(a) (defining "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."). Additionally, the ALJ also reasonably discredited Dr. Williams' opinion as she failed to "provide specific limitations as to what [Plaintiff] could or could not do[.]" *See Quisenberry v. Comm'r of Soc. Sec.,* 757 F. App'x 422, 434 (6th Cir. 2018) (An ALJ may properly reject a vague opinion that does not provide any specific functional limitations).

Finally, despite Plaintiff's statements otherwise, the ALJ did not err by finding that Dr. Williams' opinion regarding the severity of Plaintiff's impairments were "inconsistent with the medical records and examination findings … showing mostly normal gait (with a brief period of antalgia) and back to normal." (Doc. #10-2, *PageID* #46). Indeed, Plaintiff's treatment records from 2016 through September 2017 document Plaintiff as having normal gait, (Doc. #10-7, *PageID* #s 364, 411, 436, 485, 502, 560, 604), followed by a brief period from September 2017 through December 2017 having an antalgic gait, (Doc. #10-7, *PageID* #s 579, 626, 646, 667), and then having a normal gait again from at least August 2019 through February 2019. (Doc. #10-11, *PageID* #s 1293, 1307, 1322, 1334; Doc. #10-12, *PageID* #1549). Accordingly, the ALJ's decision to discount Dr. Williams' opinion on this basis is supported by substantial evidence.

At base, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016) (Jolson, M.J.), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016) (Marbley, D.J.), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). However, the

law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")). For the reasons discussed above, Plaintiff has not shown that the ALJ erred when he reviewed the opinions of CNP Hatton or Dr. Williams. Accordingly, Plaintiff's assignment of error is without merit.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #15) is **DENIED**;

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

March 28, 2022    *s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge